IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CHRISTINA S. CARNERO,

    Plaintiff,

v.                                                                                      No. 15-cv-0820 SMV

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security Administration,**

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Reverse or Remand Administrative Agency Decision and its Memorandum Brief in Support [Docs. 11, 12] (collectively, "Motion"), filed on May 11, 2016. The Commissioner responded on August 5, 2016. [Doc. 18]. Plaintiff replied on August 19, 2016. [Doc. 19]. The parties have consented to the undersigned's entering final judgment in this case. [Doc. 15]. Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds no reversible error in the Administrative Law Judge's ("ALJ") evaluation and rejection of Dr. Baum's opinion. Accordingly, the Motion will be denied.

## Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[1] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports

---

[1] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481. This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision.

the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Courts must meticulously review the entire record, but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. The decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While a court may not re-weigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

### Applicable Law and Sequential Evaluation Process

In order to qualify for disability benefits, a claimant must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

2

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) she is not engaged in "substantial gainful activity"; *and* (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) her impairment(s) either meet or equal one of the "Listings"[2] of presumptively disabling impairments; *or* (4) she is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If she cannot show that her impairment meets or equals a Listing, but she proves that she is unable to perform her "past relevant work," the burden of proof then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering her residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

**Procedural Background**

Plaintiff applied for disabled widow's benefits and supplemental security income on December 14, 2011. Tr. 18. She originally alleged a disability-onset date of March 1, 2005, but later amended it to December 6, 2011. *Id*. Her claims were denied initially and on reconsideration. *Id*. Plaintiff requested a hearing before an ALJ. *Id*. On November 15, 2013, ALJ Ben Willner presided over a hearing in Albuquerque, New Mexico. Tr. 18, 40–79. Plaintiff

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

appeared by video conference from Roswell, New Mexico, and her attorney appeared in Albuquerque. Tr. 42, 43–44. The ALJ heard testimony from Plaintiff and an impartial vocational expert ("VE"), Pamela Bowman, who appeared by telephone. Tr. 42–43, 44–73, 73−77.

The ALJ issued his unfavorable decision on January 13, 2014. Tr. 30. After finding that Plaintiff met the non-disability requirements for disabled widow's benefits set forth at 42 U.S.C. § 402(e), the ALJ proceeded to the sequential evaluation process. Tr. 20. At step one, he found that Plaintiff had not engaged in substantial gainful activity since her amended alleged onset date. Tr. 21. Accordingly, the ALJ proceeded to step two, where he found that Plaintiff suffered from the following severe impairments: "Degenerative Disc Disease; Obesity; Personality Disorder; and Depression[.]" *Id.* At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing. Tr. 21–23.

Because none of Plaintiff's impairments met or medically equaled a Listing, the ALJ went on to assess Plaintiff's RFC. Tr. 23–28. The ALJ found that

> [Plaintiff] has the [RFC] to perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b) except [she] is limited to work with simple tasks and simple instructions, for which she can maintain concentration and attention for two hours at a time before taking a normally scheduled break, and then returning to work. [Plaintiff] is limited to working primarily with things, rather than people.

Tr. 23.

At step four, the ALJ found that Plaintiff had no past relevant work. Tr. 28. Accordingly, the ALJ proceeded to the fifth step. There, based on Plaintiff's RFC, age, education, work experience, and on the testimony of the VE, he found that Plaintiff could

4

perform other work that exists in significant numbers in the national economy. Tr. 28–29. Ultimately, the ALJ found that Plaintiff had not been under a disability, as defined by the Social Security Act, during the relevant time period, and he denied the claims. *Id.* The Appeals Council denied Plaintiff's request for review on May 22, 2015. Tr. 9–11. On September 9, 2015, the Appeals Council granted Plaintiff an additional 30-day extension of time to file a civil action. Tr. 1. Plaintiff timely filed the instant action on September 17, 2015. [Doc. 1].

## **Analysis**

At issue in this case is the opinion of one-time consultative examiner, Steven K. Baum, Ph.D. Tr. 457–60. Plaintiff argues that the ALJ impermissibly ignored the results of the Minnesota Multiphasic Personality Inventory - 2nd Edition ("MMPI-2") test that Dr. Baum administered. She also argues that the ALJ erred in giving no weight to Dr. Baum's opinions (instead adopting the opinion of another one-time consultative examiner, Carl B. Adams, Ph.D.), and she urges that the case be remanded for an immediate award of benefits. [Doc. 12] at 14; [Doc. 19] at 7. The Court, however, finds no reversible error in the ALJ's evaluation and rejection of Dr. Baum's opinions. The Court agrees that the ALJ based his decision—in part—on impermissible grounds (i.e., that Plaintiff's counsel solicited Dr. Baum's opinion for purposes of her claim for benefits and that Plaintiff herself had not paid Dr. Baum). Nevertheless, the Court finds that the ALJ appropriately applied the *Watkins* factors to explain why he rejected Dr. Baum's opinion. Further, the Court finds that there is substantial evidence to support the ALJ's reasons for rejecting Dr. Baum's opinion. Finally, the Court finds that the evidence cited by Plaintiff (as supporting Dr. Baum's opinion) does not overwhelm the evidence cited by the

ALJ as detracting from Dr. Baum's opinion. The Commissioner's final decision should be affirmed.

Legal Standard for Weighing Consultative Opinions

Although ALJs need not discuss every piece of evidence, they are required to discuss the weight assigned to each medical source opinion. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)). Specifically, when assessing a plaintiff's RFC, an ALJ must explain what weight is assigned to each opinion and why. SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996). For example, the ALJ should consider the following, which the Court refers to as "the *Watkins* factors":

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003); 20 C.F.R. § 404.1527(c). "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on [a specific] functional capacity . . . because the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (alteration and internal quotation marks omitted)); *see Wells v. Colvin*, 727 F.3d 1061, 1071 (10th Cir. 2013) (same). Nevertheless, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Chapo*, 682 F.3d at 1292 (internal brackets omitted)

(quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). Ultimately, ALJs are required to weigh medical source opinions and to provide "appropriate *explanations* for accepting or rejecting such opinions." SSR 96-5p, 1996 WL 374183, at *5 (emphasis added); *see Keyes-Zachary,* 695 F.3d at 1161 (same) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)).

In this case, the ALJ gave "no weight" to Dr. Baum's opinion for numerous valid reasons. Tr. 26–27. For example, Dr. Baum opined that "the results of the test he administered [the MMPI-2] 'almost guaranteed'" that "'stress may trigger a paranoid state that includes psychosis and rapid incoherent speech with withdrawal into fantasy.'" Tr. 26 (quoting Tr. 458). However, Dr. Baum also noted that Plaintiff had "report[ed] no psychosis, thought, or mood disorder." *Id.* The ALJ juxtaposed these findings, suggesting that he believed them to be inconsistent (which corresponds to *Watkins* factor numbers 3 and 4). *Id.*

Second, the ALJ found that even though Dr. Baum believed the results of the MMPI-2 supported his opinion, no other provider (treating or examining) had "diagnosed psychosis or a paranoid state." *Id.* In other words, the ALJ found that this portion of Dr. Baum's opinion was not consistent with the other evidence of record (which corresponds to *Watkins* factor numbers 3 and 4).

Third, the ALJ found that "Dr. Baum's statement about potential changes that might happen in the future [due to stress] do not accurately describe [Plaintiff's] current condition" (which corresponds to *Watkins* factor number 6). Tr. 26.

Fourth, the ALJ rejected Dr. Baum's opinion that Plaintiff's anxiety "would preclude contact with others," because Plaintiff attends church and sporting events and picks up her niece

7

and nephew from school, "indicat[ing] at least some level of . . . social interaction" (which corresponds to *Watkins* factor number 4). Tr. 26.

Fifth, the ALJ explained that he was not persuaded by Dr. Baum's report that Plaintiff has lapses in concentration and attention. Tr. 26. The ALJ pointed to Plaintiff's "display[ of] adequate concentration and memory at the consultative examinations," and to her testimony that she picks up her niece and nephew from school, "indicat[ing] at least some level of concentration and attention" (which correspond to *Watkins* factor numbers 3 and 4). Tr. 26.

Sixth, the ALJ found that "the limitations and degree of impairment [that Dr. Baum] assessed [were] not supported by the record" (which corresponds to *Watkins* factor number 4). Tr. 27. In particular, he noted that Dr. Baum's Global Assessment of Functioning ("GAF")[3] score was 23 points lower than the score assessed by Dr. Adams[4] (which also corresponds to *Watkins* factor number 4). *Id.*

Finally, the ALJ noted that Dr. Baum had seen Plaintiff only once for a consultative evaluation (which corresponds to *Watkins* factor number 1). Tr. 27. (The ALJ further attempted to reject Dr. Baum's opinion because it had been solicited by Plaintiff's counsel and because Plaintiff had not paid for the evaluation. Tr. 27. As is explained further below, these reasons are not valid.)

---

[3] The GAF scale is used by clinicians to report an individual's overall level of functioning. *See Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders* 34 (4th ed. 2010). A GAF score of 61–70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.* A GAF score of 51–60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Id.* A GAF score of 41–50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.*
[4] Dr. Adams assessed a GAF score of 65. Tr. 439. Dr. Baum assessed a GAF score of 42. Tr. 459.

Plaintiff strenuously urges that the ALJ ignored the fact that Dr. Baum administered the MMPI-2. *See* [Doc. 12] at 3. She points out that the ALJ's decision does not mention the MMPI-2 by name, nor does it repeat Dr. Baum's finding that the results of the MMPI-2 were "valid and reliable." [Doc. 12] at 11. The Court is not persuaded.

First, the ALJ said that he "considered [the] opinion evidence." Tr. 23. The Court takes him at his word. *See Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) ("[Our general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter."). Second, although the ALJ did not explicitly utilize the title "MMPI-2," his decision does explicitly refer to "the test [Dr. Baum] administered," Tr. 26, and the MMPI-2 was the only test Dr. Baum administered, Tr. 457–60. Third, the ALJ's decision explicitly referred to, and then discussed, the results of the MMPI-2, including Dr. Baum's diagnoses and opinions as to Plaintiff's functional limitations. Tr. 26–27. The Court finds that the ALJ considered Dr. Baum's opinion, including the results of the MMPI-2.

Next, Plaintiff challenges the ALJ's rejection of Dr. Baum's opinion because she sees it as an impermissible substitution of the ALJ's own medical opinion. [Doc. 12] at 11–12 (citing *Kemp v. Bowen*, 816 F.2d 1469, 1476 (10th Cir. 1987) (An ALJ may not "interpose his own 'medical expertise' over that of a physician[.]"); *Winfrey v. Chater*, 92 F.3d 1017, 1022 (10th Cir. 1996) ("[T]he ALJ clearly overstepped his bounds when he substituted his medical judgment for that of [the physician], by determining that the results of the MMPI-2 test were not an adequate basis on which to make a diagnosis.")). Plaintiff argues that because the ALJ did not mention the MMPI-2 test by name, he "clearly repudiate[ed] and reject[ed] it," which he may not do because such rejection would constitute an impermissible substitution of his own medical

9

opinion for that of Dr. Baum. [Doc. 12] at 12. The Court disagrees. The ALJ gave several reasons—all of which correspond to the *Watkins* factors—for rejecting Dr. Baum's opinion. The reasons are supported by substantial evidence; indeed, Plaintiff does not argue otherwise. None of the ALJ's reasons constitutes an impermissible medical opinion by the ALJ.

Plaintiff also argues that the ALJ erred in rejecting Dr. Baum's opinion, at least in part, because Plaintiff's attorney had arranged for the evaluation. [Doc. 12] at 12. The Court agrees with Plaintiff on this point. This reason "implies that a consulting examiner's opinion is necessarily less trustworthy when it is sought or obtained by the claimant, a position that [the Tenth Circuit] long ago rejected in the context of treating physicians' opinions." *Crowder v. Colvin*, 561 F. App'x 740, 743 (10th Cir. 2014) (citing *McGoffin v. Barnhart*, 288 F.3d 1248, 1253 (10th Cir. 2002); *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987)). Additionally, Plaintiff points out that the ALJ adopted the opinion of Dr. Adams, who evaluated Plaintiff at the request of the agency, and was presumably paid by the agency, for the sole purpose of generating evidence for Plaintiff's claim. [Doc. 12] at 12–13; [Doc. 19] at 1–2. Plaintiff's point is that the ALJ's reason for questioning the trustworthiness of Dr. Baum's report would apply equally to Dr. Adams' report. The point is well-taken. Insofar as the ALJ relied on Plaintiff's counsel's arranging for Dr. Baum's evaluation and Plaintiff's not paying for the evaluation herself, such reliance was impermissible. However, such error does not require remand because the ALJ cited numerous other valid reasons for rejecting Dr. Baum's opinion, and those reasons are sufficient to sustain the rejection.

Finally, Plaintiff argues that the ALJ focused solely on select inconsistencies between Dr. Baum's opinions and the other medical evidence and failed to consider the portions of the

record that were consistent with and supported Dr. Baum's opinions. [Doc. 12] at 13. Plaintiff lists the evidence that she believes supports Dr. Baum's opinion. [Doc. 12] at 2–11; [Doc. 19] at 4–5. For example, Plaintiff points to—and this list is not exhaustive—her own testimony about her symptoms; her lack of work history; her sister's report about Plaintiff's ability to function; the report from Keith Webb, a Social Security claims representative, to the effect that Plaintiff had difficulty understanding, concentrating, and answering; and the fact that Dr. Baum performed an MMPI-2, whereas Dr. Adams performed only an evaluation with no specific testing and had not seen Dr. Baum's report (which was issued about 8 months later).

The Court agrees that this evidence could be interpreted as supporting portions of Dr. Baum's opinion. However, this Court may not re-weigh the evidence. Nor may it substitute its judgment for that of the ALJ. *See Flaherty*, 515 F.3d at 1070. The question is not whether there is evidence that could support *Dr. Baum's opinion* (or a finding of disability). The question is whether there is substantial evidence—more than a mere scintilla—to support the *ALJ's findings*. *Langley*, 373 F.3d at 1118. Excluding the ALJ's impermissible reliance on matters he should not have considered (that Plaintiff's counsel solicited Dr. Baum's opinion for purposes of her claim for benefits and that Plaintiff herself had not paid Dr. Baum), the Court finds that the ALJ appropriately and sufficiently applied the *Watkins* factors to explain why he rejected Dr. Baum's opinion. Further, the Court finds that there is substantial evidence to support the ALJ's reasons for rejecting Dr. Baum's opinion. Finally, the Court finds that the evidence cited by Plaintiff (as supporting Dr. Baum's opinion) does not overwhelm the evidence cited by the ALJ as detracting from Dr. Baum's opinion. *See Langley*, 373 F.3d at 1118 (The

decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it.").

## **Conclusion**

The Court finds no reversible error in the ALJ's evaluation and rejection of Dr. Baum's opinion. The Motion will be denied and the Commissioner's final decision, affirmed.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion to Reverse or Remand Administrative Agency Decision [Doc. 11] is **DENIED**. The Commissioner's final decision is **AFFIRMED**.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**